**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Anthony Mark Reeves,   Case No. 3:13CV1425

    Plaintiff,

  v.   **ORDER**

Carolyn Colvin,
Acting Commissioner of Social Security,

    Defendant.

The Social Security Administration (SSA) denied plaintiff Anthony Mark Reeve's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff appealed to this court, 42 U.S.C. § 405(g), and the Magistrate Judge's Report and Recommendation (R&R) concluded that I should affirm that decision. (Doc. 21). Plaintiff filed timely objections. (Doc. 22).

For the reasons set forth below, I affirm the Magistrate Judge's recommendation and overrule plaintiff's objections.

**Background**

The R&R sets forth the factual and procedural background in detail, so I summarize only the relevant evidence. Plaintiff is forty-five years old and has an 11th grade education.

In the past fifteen years, plaintiff has worked as a dump truck driver, mould setter, machine operator, painter, counter top maker, and a supermarket attendant. The supermarket laid plaintiff off in 2008 and he has not yet found new employment.

During his free time, plaintiff played the guitar and the drums in a band and socialized with friends. Plaintiff helped with daily chores, including mowing the lawn, washing the dishes, preparing his own meals, and caring for his dog. He has three children and currently lives with his girlfriend.

### A. Plaintiff's Medical History

Plaintiff has received brief and irregular medical care for pain in his ear, neck, spine, and upper left extremities.

In August, 2007, Nicolas Finley, M.D., at the Butler Clinic treated plaintiff for ear and neck pain. Dr. Finley found that plaintiff had some signs of cervical disk disease and tenderness along his left rotator cuff and trapezius muscle. Dr. Finley prescribed Flexeril and Ultram, recommended heat and massage treatment, and offered a steroid injection, which plaintiff refused.

In May, 2010, plaintiff had a CT scan that Charles Felix, M.D., reviewed. Dr. Felix diagnosed plaintiff with degenerative disk disease and advised plaintiff to follow up with his family physician and undergo physical therapy. After the visit to Dr. Felix, plaintiff did not seek treatment again for his physical impairments for little over a year.

Consultative examiner, Lamberto Diaz, M.D., examined plaintiff on February 16, 2011. Dr. Diaz noted that plaintiff had a slightly reduced range of motion in his spine, but had normal range of motion in all his upper and lower extremities. Plaintiff reported to Dr. Diaz that he was unable to hold a gallon of milk, turn a steering wheel, or do anything with his left hand. Dr. Diaz observed that plaintiff did not have any musculature defects or muscle atrophy and questioned whether plaintiff was malingering during the examination.

At the end of his report, Dr. Diaz opined that, based on plaintiff's current history, he was not suitable for sedentary work. Dr. Diaz did not provide any further explanation for his assessment. However, Dr. Diaz recommended further testing to determine if plaintiff had a neurological or cord related defect, neuropathy from his alcoholism, or was, in fact, malingering.

On March 17, 2011, M. Stalter, M.D., examined plaintiff at Compassion Clinic for neck pain. On examination, Dr. Stalter observed that plaintiff had tenderness along his cervical spine and slightly reduced strength in his left arm.

Plaintiff next sought treatment from orthopedic specialist Ashok Biyani, M.D., for his neck pain. Dr. Biyani examined plaintiff on one occasion on May 25, 2011. Dr. Biyani also reviewed plaintiff's May 24, 2010 CT scan and determined that he had degenerative disc disease in his cervical spine and left arm radiculopathy. Dr. Biyani prescribed physical therapy and told plaintiff to return if he remained symptomatic. Plaintiff did not go to physical therapy or return to Dr. Biyani.

Plaintiff went back to the Compassion Medical Clinic on November 7, 2011 seeking assistance with his Social Security Disability forms and because he was suffering from diarrhea. When asked why he did not undergo physical therapy as Dr. Biyani recommended, plaintiff indicated that he "did not think physical therapy would work." (Doc. 13 at 414). When asked why he did not return to Dr. Biyani, plaintiff responded that he did not remember.

Plaintiff met with counselor David Brown, P.C.C., at Maumee Valley Guidance Center on January 31, 2011. Plaintiff stated he wanted outpatient counseling to help with his anger management and binge drinking. He reported difficulty during the past two years controlling his anger. Plaintiff did not report – and Mr. Brown did not observe – any hallucinations, delusions, memory impairment, motor retardation, speech disorder, grooming concerns, or inappropriate affect.

Mr. Brown diagnosed plaintiff with Adjustment Disorder with mixed anxiety and depressed mood and rated his Global Assessment of Functioning (GAF) score at fifty-one. He saw plaintiff again in September, 2011, and noted plaintiff was making progress.

On April 5, 2011, plaintiff met with Enedina Berrones, M.D., at Maumee Valley Guidance Center. Dr. Berrones stated plaintiff was cooperative and displayed appropriate behavior. His speech, thought process, and thought content were all normal.

Dr. Berrones advised plaintiff to continue with counseling once per month and assigned a GAF score of fifty-one to sixty. Dr. Berrones saw plaintiff again on April 29, 2011,  June 24, 2011, and November 20, 2011 and reached the same conclusion at each visit regarding plaintiff's GAF score.

### B. Agency Physician Opinions

Two state agency physicians and two state agency psychologists also reviewed plaintiff's medical records.

On August 25, 2010, state agency physician, Willa Caldwell, M.D., reviewed plaintiff's medical records and determined plaintiff could perform a reduced range of light work. Dr. Caldwell found that, despite plaintiff's impairments, he could lift twenty pounds occasionally, ten pounds frequently, and stand, sit, and/or walk six hours in an eight hour day. She also found plaintiff was limited to occasional pushing, pulling, overhead reaching with his left arm, and climbing ladders, ropes, and scaffolding.

Dr. Caldwell, however, stated plaintiff was unlimited in his ability to balance, stoop, kneel, crawl, crouch, and climb ramps and stairs. Finally, Dr. Caldwell found plaintiff did not have any manipulative, visual, communication, or environmental limitations.

Next, on March 14, 2011, state agency physician Lynne Torello, M.D., reviewed plaintiff's medical records and concluded plaintiff could perform a reduced range of light work. She found plaintiff could lift twenty pounds occasionally and ten pounds frequently, and could sit, stand, and/or walk six hours in an eight hour day. Dr. Torello also found plaintiff was limited to occasional pushing, pulling, and overhead reaching with his left arm. He opined that plaintiff was not limited in his ability to climb stairs or ramps, stoop, or kneel.

In contrast with Dr. Caldwell's opinion, Dr. Torello found plaintiff had postural limitations and could never climb ladders, ropes, or scaffolds and could only occasionally crouch. Dr. Torello stated plaintiff was limited in his ability to perform fine and gross manipulation with his left hand. Finally, he opined that plaintiff should avoid heights, moderate exposure to dangerous machinery, and concentrated exposure to vibrations.

On October 19, 2010, state agency psychologist, Melanie Bergsten, Ph.D., reviewed plaintiff's medical records. Dr. Bergsten determined that plaintiff was moderately limited in his ability to get along with co-workers and interact with the public; accept instructions; respond appropriately to changes in the work setting; and complete a normal workday. Dr. Bergsten found that plaintiff remained capable of performing work-related tasks in situations where duties were relatively static and changes can be explained.

State agency psychologist, John Waddell, Ph.D., reviewed plaintiff's medical records on April 11, 2011. He opined that plaintiff had mild limitations in his activities of daily living; moderate limitations in his ability to maintain social functioning; moderate limitations in his ability to maintain concentration, persistence, or pace; had no episodes of decompensation; and could perform work-related tasks in situations where duties were relatively static.

Dr. Waddell also found plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence, and, therefore, plaintiff's statements were only partially credible.

### C. The ALJ's Decision

Plaintiff applied for disability and social security benefits in 2010, alleging a disability onset date of October 1, 2009, due to neck injury, left knee problems, and prior heart attack. The SSA denied the application, and plaintiff requested a hearing before an Administrative Law Judge (ALJ).

On February 8, 2012, the ALJ issued a decision finding that plaintiff was not disabled. The ALJ concluded that plaintiff suffered from degenerative disc disease of the cervical spine with left arm radiculopathy, status-post previous posterior spinal fusion at C5-C6, tremor in both hands of unknown origin, hypertension, and depression.

The ALJ then concluded plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that plaintiff can only occasionally: reach overhead with his left arm; handle objects with his left hand; and finger (finely manipulate) with his left hand.

The ALJ limited plaintiff to simple, repetitive tasks, and only occasional interaction with the public. He also concluded that plaintiff must be able periodically to alternate between sitting and standing while at his workstation and attending to work tasks.

Given that RFC, the ALJ concluded plaintiff could not perform any of his past relevant work but could find work as a blending tank helper, thermal surfacing machine attendant, and school bus monitor.

In his analysis, the ALJ assigned varying degrees of weight to the medical opinions that were presented. For Dr. Biyani's opinion, the ALJ did not identify Dr. Biyani as a treating physician nor did he assign a specific weight to Dr. Biyani's opinion. The ALJ emphasized plaintiff only saw Dr. Biyani on one occasion and disregarded Dr. Biyani's advice to return for further treatment and physical therapy.

The ALJ accorded some weight to Dr. Diaz's opinion evidence. The ALJ highlighted the portion of Dr. Diaz's opinion that described the discrepancies between plaintiff's complaints and the objective physical evidence from the exam. The ALJ, however, declined to follow Dr. Diaz's opinion that plaintiff could not perform the full range of sedentary work. The ALJ did not follow Dr. Diaz's conclusion because of Dr. Diaz's inability to determine whether plaintiff's symptoms were related to a neurologic condition, plaintiff's alcoholism, or malingering during the examination.

The ALJ assigned great weight to the agency's physicians, Drs. Caldwell, Torello, Bergsten, and Waddell, physical and mental assessments because he found their opinions were consistent with the record as a whole.

Plaintiff requested review of the ALJ's decision, but the Appeals Council denied that request. Plaintiff then brought this suit under 42 U.S.C. § 405(g), contending that the Commissioner's decision should be reversed and the case remanded.

**Standard of Review**

"In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the [Social Security] Act and therefore entitled to benefits." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). I review the Commissioner's decision to

determine whether "it is supported by substantial evidence and was made pursuant to proper legal standards."*Id.*

Substantial evidence is evidence that a reasonable mind would accept to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Whether the ALJ has supported the decision with substantial evidence is a question answered in light of "the record taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984).

Because plaintiff filed timely objections, I conduct a de novo review of those parts of the R&R to which he specifically objects. 28 U.S.C. § 636(b)(1).

## Discussion

Plaintiff asserts the ALJ's RFC was not based on substantial evidence from the record. Specifically, plaintiff objects to the RFC on the grounds that the ALJ: 1) declined to afford Dr. Biyani's opinion controlling weight under the treating-physician rule; 2) afforded great weight to the agency physicians' medical opinions; and 3) failed to include restrictions in the RFC for plaintiff's cervical spine, lumbar spine, and mental health impairments.

### A. Treating Physician Rule

Plaintiff's first objection to the RFC determination is that the ALJ violated the treating-physician rule when he did not afford controlling weight to Dr. Ashok Biyani's medical opinion. Although the SSA evaluates each medical opinion that it receives, it classifies opinions into three types: treating sources, nonexamining sources, and nontreating sources. 20 C.F.R. § 404.1502. The

8

amount of weight an ALJ is required to give a medical opinion depends on the opinion's classification.

A treating source is a medical provider that has "an ongoing relationship" with the claimant. *Id*. An "ongoing relationship" is one in which the claimant has seen "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [claimant's] medical condition." *Id*.

A physician who examines a claimant on only one occasion does not have an "ongoing relationship" with the claimant and is not a treating physician. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (2007) (holding that a physician who examined the claimant once and filled out a single "physical capacity evaluation" was not a treating source). "A plethora of decisions unanimously hold that a single visit does not constitute a treating relationship." *Kornecky v. Comm'r of Soc. Sec.,* 167 F.App'x. 496, 506 (6th Cir. 2006) (citing *White v. Barnhart,* 415 F.3d 654, 658 (7th Cir.2005)). "Indeed, depending on the circumstances and nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky*, *supra*, 167 F. App'x. at 407.

Unlike a treating source, a "nonexamining source means a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." § 404.1502. A "nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *Id*.

In assigning weight to each category, there is a rebuttable presumption that the ALJ will give the treating source physician's opinion controlling weight. *Rogers*, *supra*, 486 F.3d at 244. The SSA

9

emphasizes treating source opinions because they are "likely to be medical professionals most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment." § 404.1527(d)(2).

If the ALJ determines a physician is a treating source but does not give the opinion controlling weight, he must provide "good reasons" for his failure to do so. Social Security Ruling 96-2p, 1996 WL 374188, *5. The "good reasons" requirement serves as a procedural safeguard so claimants can understand why the "administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (2007) (citing *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)).

Unlike treating sources, an ALJ need not give "nonexamining sources" and "nontreating sources" deferential weight. *Smith, supra*, *482 F.3d at 877.* Rather, the ALJ's treatment of nonexamining and nontreating sources need only be supported by substantial evidence from the record. 42 U.S.C. § 405(g); *Rogers, supra,* 486 F.3d at 241 (6th Cir. 2007).

The classification of a medical opinion under § 404.1502 is a question of law I review de novo. *Smith, supra, 482 F.3d at 877.*

Plaintiff asserts the ALJ erred when he did not classify Dr. Biyani as a treating source physician and give the opinion controlling weight. I do not agree.

Dr. Biyani did not have an ongoing relationship with plaintiff because he examined plaintiff on only one occasion in May, 2011. The Sixth Circuit has already held that a physician who examines a patient once is not a treating-source physician as defined in § 404.1502.

Dr. Biyani advised plaintiff to do physical therapy and return to him if he continued to experience pain. Yet after the May 25, 2011 examination, plaintiff had no further contact with Dr. Biyani.

The purpose of the treating-source physician rule is to give deference to a physician who has ongoing familiarity with the claimant's condition. This is not the case where, as here, the physician conferred with the plaintiff once.

Because Dr. Biyani only examined plaintiff on one occasion and provided no further care, I find that Dr. Biyani was a nontreating source. As a nontreating source, Dr. Biyani's opinion was not entitled to controlling weight and the ALJ did not have to provide a detailed discussion of "good reasons" for discounting Dr. Biyani's opinion in his RFC determination. The ALJ only needed to base his RFC determination on substantial evidence from the record as a whole.

### B. Agency Physician Decisions

Plaintiff's second objection is that the ALJ's decision was not based on substantial evidence because the ALJ assigned great weight to the state agency medical consultants' opinions. Plaintiff argues the opinions were not entitled to great weight because they were inconsistent with each other and with the record as a whole.

Despite plaintiff's assertions, the state agency consultants' opinions were not in conflict with one another or with the record as a whole.

To determine plaintiff's physical RFC, the state employed physicians Caldwell and Torello. Dr. Caldwell assigned lifting, sit/stand, push/pull, and climbing restrictions. Dr. Caldwell also explicitly referenced plaintiff's left arm, stating that plaintiff had limited overhead reaching with his left arm. In addition to the restrictions Dr. Caldwell assigned, Dr. Torello assigned plaintiff manipulative limitations including limited left handling, left fingering, and left feeling.

Dr. Caldwell's and Dr. Torello's medical opinions are not irreconcilable. On the contrary, each medical opinion arises from the same underlying issue: plaintiff's limitations in his left

11

extremity. Dr. Torello's opinion simply went a step further and assigned manipulative limitations specific to plaintiff's left hand.

The ALJ, moreover, accounts for both Dr. Caldwell's and Dr. Torello's assessments in his RFC determination. Not only does the ALJ limit plaintiff to light work as defined in § 404.1567(b), but the ALJ included limitations that were specific to plaintiff's left extremity. He found that plaintiff can only occasionally engage in the following: overhead reaching with his left arm; handling of objects with his left hand; and fingering (fine manipulation) with his left hand.

The ALJ's discussion of the medical record supports the ALJ's treatment of the state agency consultants' opinions. The opinions of Drs. Finley, Stalter, Biyani, and Diaz are each consistent with the state agency consultants' determination that plaintiff has some limitations in his upper left extremity.

In 2007, Dr. Finley observed that plaintiff was tender along his left trapezius muscle and rotator cuff and showed decreased strength. Similarly, in May, 2011, Dr. Stalter observed that plaintiff had "tenderness along his cervical spine" and "weakness in his upper left extremity." (Doc. 13 at 416). Also in May, 2011, Dr. Biyani noted plaintiff revealed mild to moderate tenderness in his cervical spine, but that plaintiff "demonstrated good range of motion of his upper extremities without evidence of deformity or tenderness."(Doc. 13 at 405). Shortly after, Dr. Diaz observed that claimant was "very muscular and well-developed." (Doc. 13 at 402).

Contrary to plaintiff's assignment of error, the ALJ supported his assignment of great weight to the state agency medical consultants' opinions by emphasizing the consistency between the opinions and with the record as a whole. Based on the medical record, substantial evidence supports the ALJ's treatment of the agency physician opinions in making his RFC determination.

### C. Specific Limitations in the RFC

In his third objection, plaintiff argues the ALJ did not base his RFC assessment on substantial evidence from the record because the ALJ failed to take into account plaintiff's cervical spine, lumbar spine, and mental health impairments. Plaintiff's objection is without merit.

### 1. Plaintiff's Cervical and Lumbar Spine Impairments

Plaintiff argues the ALJ's RFC limitations did not properly take into account plaintiff's cervical spine and lumbar spine impairments.

To account for plaintiff's cervical or lumbar spine impairments in the RFC, the ALJ limited plaintiff to light work as defined in §§ 404.1567(b), 416.967(b). The ALJ also included sitting and standing limitations stating that plaintiff "must periodically alternate between sitting and standing while at the workstation and attending to work tasks."

Plaintiff provides two bases for his argument that these limitations did not properly account for plaintiff's lumbar and cervical spine impairments.

First, plaintiff relies on the opinion of consultative examiner Dr. Diaz to assert that the RFC inadequately addressed plaintiff's cervical and lumbar spine impairments. Dr. Diaz opined that plaintiff was not suited for the full range of sedentary work.

The ALJ declined to follow this conclusion because of the inconsistencies in Dr. Diaz's opinion. As emphasized by the ALJ, Dr. Diaz's opinion showed medical disparities between Dr. Diaz's physical exam and plaintiff's claims. Notably, plaintiff claimed he was unable to hold a gallon of milk, turn a steering wheel, or do anything heavy with his left hand, but Dr. Diaz remarked that plaintiff was muscular, well-developed, and had no signs of musculature atrophy.

The ALJ also stressed that Dr. Diaz's diagnosis was not definitive. Although Dr. Diaz opined that plaintiff was not suitable for all sedentary work, he concluded plaintiff needed further testing to determine if his symptoms were related to a neurological condition, alcoholism, or if plaintiff was simply malingering during the entire examination.

The ALJ, having analyzed the inconsistencies between Dr. Diaz's consultative exam and the totality of the medical evidence, had no reason, and was not required to, base his RFC determination on a single, nontreating, physician's opinion.

Second, plaintiff argues the ALJ erred when he failed to include a specific time period in the sitting and standing limitation in the RFC. Plaintiff cites a Seventh Circuit opinion, *Arnett v. Astrue*, 676 F. 3d 586 (7th Cir. 2012), to support the proposition that a sitting and standing limitation in the RFC requires the ALJ to indicate a specific frequency. There is no support for this proposition in Sixth Circuit case law, and I decline to extend such a rule here.

## 2. Plaintiff's Mental Health Impairments

Plaintiff also argues the ALJ erred by failing to include limitations on plaintiff's contact with fellow workers or supervisors. Plaintiff bases this assignment of error on state agency psychologists Drs. Bergsten and Waddell's statements that plaintiff "is able to relate to a few familiar others on a superficial basis." (Doc. 13 at 97, 114).

Contrary to plaintiff's assertion, the ALJ's RFC assessment is consistent with the state agency psychologists' opinions, plaintiff's GAF scores, and plaintiff's testimony.

Both state agency psychologists opined that plaintiff was only moderately limited in his ability to interact with the public and get along with coworkers. Likewise, plaintiff's treating sources assessed him with GAF scores ranging from fifty-one to sixty. A GAF score of fifty-one to sixty

corresponds to moderate symptoms and moderate social difficulty. Plaintiff's own testimony also revealed he played in a band and socialized regularly with friends.

Consequently, the ALJ addressed plaintiff's moderate social limitations in the RFC by limiting plaintiff to simple, repetitive tasks, and only occasional interaction with the public.

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT

1. The Magistrate Judge's Report and Recommendation be, and the same hereby is, adopted by this Court. (Doc. 21).

2. Accordingly, the Court overruled plaintiff's objections.

3. The decision of the Commissioner is affirmed.

4. This action is hereby dismissed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge